# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

06-6027EM

_____

| | | |
|---|---|---|
| In re: Alvin Leroy Baldwin, | * | |
| | * | |
| Debtor | * | |
| | * | |
| Alvin Leroy Baldwin, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Debtor - Appellant, | * | Eastern District of Missouri |
| | * | |
| v. | * | |
| | * | |
| Credit Based Asset Servicing | * | |
| and Securitization, | * | |
| | * | |
| Creditor - Appellee. | * | |

_____

Submitted: December 7, 2006
Filed: December 13, 2006

_____

KRESSEL, Chief Judge, FEDERMAN and VENTERS, Bankruptcy Judges

FEDERMAN, Bankruptcy Judge

Debtor Alvin Leroy Baldwin appeals from the Bankruptcy Court's[1] March 28, 2006 Order denying his motion, which we deem to be a Rule 60(b)(4)[2] motion for relief from the Court's March 9, 2006 Order dismissing his case. For the reasons that follow, the Order is affirmed.

FACTUAL BACKGROUND

Debtor Alvin Leroy Baldwin has filed eight Chapter 13 bankruptcy cases since 1996, all of which were dismissed prior to confirmation of a plan. Four of the cases were filed after he entered into a home loan with the predecessor of Credit Based Asset Servicing and Securitization (CBASS) in May 2002. Specifically, on January 6, 2003, the Debtor filed what was his fifth Chapter 13 case. That case was dismissed two months later, on March 10, 2003, on the trustee's motion for failure to commence plan payments. He filed his sixth Chapter 13 case eleven days later on March 21, 2003. CBASS filed a Proof of Claim in that case showing a prepetition arrearage of $8,255.24. That case was dismissed two months later, on May 21, 2003, on a creditor's motion to dismiss. No payments had been made under that plan. After that sixth case was dismissed, CBASS scheduled a foreclosure sale for March 24, 2005. That same day, the Debtor filed his seventh Chapter 13 case. CBASS filed a Proof of Claim in that case showing prepetition arrearage of $12,618.52. The seventh case was dismissed two months later on May 19, 2005, for the Debtor's failure to appear at the § 341 meeting. No payments had been made under that plan. After that seventh case was dismissed, CBASS set another foreclosure sale for July 14, 2005. That sale was canceled because the Debtor and CBASS entered into a workout agreement which provided for increased payments to bring the account current. The Debtor defaulted

---

[1] The Honorable Barry S. Schermer, United States Bankruptcy Judge for the Eastern District of Missouri.

[2] Fed. R. Civ. P. 60(b), made applicable to bankruptcy proceedings pursuant to Fed. R. Bankr. P. 9024.

2

under the terms of the workout agreement and CBASS scheduled another foreclosure sale for March 2, 2006. The Debtor, *pro se,* filed the instant Chapter 13 petition, his eighth case, on February 23, 2006.

Upon being notified of the current bankruptcy filing, CBASS postponed the March 2 foreclosure sale to March 9, 2006 at 11:00 a.m., which is the maximum length of time a scheduled foreclosure sale can be continued under Missouri law, without the consent of the mortgagor.[3] On March 3, 2006, CBASS filed a Motion to Expedite Hearing and Motion to Dismiss, or in the Alternative, for Relief from the Automatic Stay. CBASS also requested that the Court bar the Debtor from filing another case for 180 days. The Bankruptcy Court set the hearing on CBASS's Motion for 9:00 a.m. on March 9, 2006, which was the day scheduled for the postponed foreclosure sale. On the morning of March 9, when the Bankruptcy Court called the matter at 9:00, the Debtor was not present, so the Court passed the matter to the end of the morning's docket to give the Debtor more time in which to appear. The Court reconvened the matter at approximately 10:38 a.m. Again, the Debtor was not present.

The Debtor did not appear at the hearing because, he says, he did not receive notice of it due to his being out of town on business as an over-the-road truck driver. He did find out about the hearing, however, after the Motion and Notice were delivered by the postal service and opened by his live-in companion at approximately 10:45 a.m. that morning, which was not enough time for him to appear or otherwise respond prior to the hearing.

In any event, at the hearing, CBASS alleged that the bankruptcy case should be dismissed, or relief from the stay granted, because this was the Debtor's eighth bankruptcy filing and the third time CBASS had stayed or canceled a pending

---

[3] Mo. Rev. Stat. Ann. § 443.355.2.

foreclosure sale on this property. The Bankruptcy Court granted the motion to expedite, dismissed the case, and barred the Debtor from refiling for 180 days, finding that this case was filed solely to hinder, delay and frustrate creditors, and thus not filed in good faith. The Court denied as moot the motion for relief from the stay. CBASS proceeded with its foreclosure sale at approximately 11:00 a.m. and sold the property to a third party, Cody Properties, as the highest bidder at the sale.

That same day, at 12:34 p.m., the Debtor filed a pleading in the Bankruptcy Court, entitled "Debtor's Motion Agstin [sic] Motion for Expedited Hearing," in which he objected to the expedited hearing and requested that "the motion to release for sale be rescinded and that I be allowed to contest this motion in a timely manner." He stated in that Motion that he had not been at his home in months, and that his driving logs would verify he had been on the road between Pennsylvania and California since March 3. Hence, he did not receive notice of the hearing in time to be there. He stated he was still in California, even at the time of the hearing that day, so he asked that the request for expedited hearing be denied. On March 15, the Court denied this motion as moot because the hearing had already taken place. On March 23, 2006, the Debtor filed a motion requesting that his bankruptcy case be reinstated and the foreclosure sale be set aside as void, again asserting he did not receive notice due to his being on the road since the first part of February. On March 28, 2006, the Bankruptcy Court denied that motion as being untimely since it was filed more than ten days after the Order dismissing the case was entered. The Debtor filed his Notice of Appeal on April 3, 2006. The Debtor requested a stay pending appeal, but the Court denied that request.

CBASS filed a motion to dismiss the appeal, asserting it was moot because the Debtor failed to obtain a stay pending appeal and the foreclosure sale had already occurred. We denied CBASS's motion but cautioned that, due to the procedural posture of the case, any appeal from the Court's Order dismissing the case as being filed in bad faith was untimely, so the appeal was limited to the issue of whether the

4

Court erred in denying the Debtor relief from the dismissal Order on the ground it was void for due process violations.

DISCUSSION

We review the bankruptcy court's legal conclusions *de novo* and its factual findings for clear error.[4]

At the outset, we note that the Bankruptcy Court's March 28 Order denied the Debtor's March 23 Motion because it was filed more than ten days after the dismissal Order was entered. However, because we deemed the March 23 Motion to be a Rule 60(b) motion to vacate the dismissal Order, it was timely. Nevertheless, we are not bound by the grounds articulated by the bankruptcy court for denying the Debtor's motion, and we may affirm the judgment on any other grounds supported by the record.[5] Because we conclude that the Debtor received sufficient notice under the particular circumstances, the Bankruptcy Court did not err in refusing to set aside the dismissal Order.

Section 1307(c) provides, in relevant part, that "on request of a party in interest . . . and after notice and a hearing," the court may convert or dismiss a Chapter 13 case

---

[4] *First Nat'l Bank of Olathe v. Pontow (In re Pontow),* 111 F.3d 604, 609 (8th Cir. 1997); *Sholdan v. Dietz (In re Sholdan),* 108 F.3d 886, 888 (8th Cir. 1997); Fed. R. Bankr. P. 8013.

[5] *Matter of Royale Airlines, Inc.*, 98 F.3d 852, 856 (5th Cir. 1996) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1534 n. 12 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994)); *Arthur Pew Const. Co. v. Lipscomb*, 965 F.2d 1559 (11th Cir. 1992).

for cause.[6]  Such cause includes filing a bankruptcy petition in bad faith, including unfairly manipulating the bankruptcy code through multiple filings.[7]  As stated above, the issue here is not whether the Bankruptcy Court erred in dismissing the case due to bad faith, because any appeal from that Order was untimely; rather, the sole issue is whether the Bankruptcy Court erred in failing to set aside the Order dismissing the Debtor's case due to insufficiency of the notice of CBASS's Motion and the hearing.

The phrase "after notice and a hearing" means "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances."[8]  The phrase authorizes an act without an actual hearing if such notice is given properly and "there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act."[9]

Rule 1017 provides that Rule 9014 governs a proceeding to dismiss a case under § 1307(c).[10]  Motions for relief from the stay are also contested matters to which Rule 9014 is applicable.[11]  Under Rule 9014:

> **(a) Motion.**  In a contested matter in a case under the Code not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party

---

[6]  11 U.S.C. § 1307(c).

[7]  *See In re Molitor*, 76 F.3d 218, 220 (8th Cir. 1996).

[8]  11 U.S.C. § 102(1)(A).

[9]  11 U.S.C. § 102(1)(B).

[10]  Fed. R. Bankr. P. 1017(f)(1).

[11]  Fed. R. Bankr. P. 4001(a).

against whom relief is sought. No response is required under this rule unless the court orders an answer to a motion.

**(b) Service.** The motion shall be served in the manner provided for service of a summons and complaint by Rule 7004. Any paper served after the motion shall be served in the manner provided by Rule 5(b) F.R.Civ.P.[12]

Rule 7004(b) authorizes service by first class mail prepaid postage "[u]pon the debtor, after a petition has been filed . . . by mailing a copy of the summons and complaint to the debtor at the address shown in the petition or statement of affairs or to such other address as the debtor may designate in a filed writing and, if the debtor is represented by an attorney, to the attorney at the attorney's post-office address."[13]

CBASS filed the Motion on Friday, March 3, 2006. Hearing was set for March 9. When asked about service at that hearing, CBASS's counsel stated that the Motion and Notice were mailed on March 3 and that she had obtained personal service on the Debtor on March 7. The Debtor does not dispute that CBASS's attorney mailed the Motion and Notice on March 3, and that it was mailed to his correct address as reflected on his petition. He does dispute the assertion that CBASS obtained personal service on him, reiterating that he is an over-the-road truck driver who had not been home since the first part of February and did not return until sometime after the date of the foreclosure sale on March 9. Because CBASS did not submit an affidavit of personal service, we will presume for these purposes that it did not obtain personal service on the Debtor.

Thus, the question is whether the mailed Notice and Motion, which were mailed via first-class mail on Friday, March 3, was reasonable and appropriate notice of the

---

[12] Fed. R. Bankr. P. 9014(a) and (b).

[13] Fed. R. Bankr. P. 7004(b)(9).

7

hearing on Thursday, March 9, under the particular circumstances. The parties each point to Rule 9006's computation of time formulas,[14] but that rule deals only with situations where a response or act is computed from the date of service. It has no applicability here because the issue is not whether the Debtor had a certain number of days in which to act or respond to CBASS's Motion, but whether the notice of the Motion and hearing was reasonable under the particular circumstances.

With regard to expedited hearings, the Local Rules for the Bankruptcy Court in the Eastern District of Missouri provide:

> **Service of Notice of Hearing.** Movant must serve the notice of hearing upon the same parties served with the motion (L.B.R. 9013-1 A.) *When a motion is heard on an expedited or emergency basis (L.B.R. 9013-2), the motion and notice of hearing must be served as expeditiously as possible (e.g. by personal service or electronic means) upon opposing counsel or upon the opposing party if not represented by counsel, and any other necessary parties.*[15]

The Debtor asserts that the regular first-class mail notice, mailed six days prior to the hearing, and on a Friday, is insufficient to meet this requirement. Under other circumstances, we might agree. However, in this case, the Debtor filed his bankruptcy case when he knew a foreclosure sale was pending, and while he was away from the only address known for him for a period of several weeks. This was the Debtor's eighth bankruptcy filing, and not his first case filed for the purpose of staying a foreclosure sale. Because the Debtor chose to file his case *pro se* such that CBASS could not contact an attorney, and he filed the case during a weeks-long period of time when he was absent from the State of Missouri, there was no reasonable way for

---

[14] Fed. R. Bankr. P. 9006(a) and (f).

[15] L.B.R. 9060-1 C (emphasis added).

CBASS to have provided him with notice in any form. Accordingly, we conclude that the mailed notice six days prior to the hearing was sufficient under the circumstances.

The Debtor relies on *In re Krueger*, which said that although the concept of "notice and a hearing" is a flexible one, it was inappropriate under the circumstances of that case for the debtors to be uninformed of the hearing at which their bankruptcy case was dismissed.[16] Further, although the statutes require only that the moving party provide a debtor with adequate *notice* of the hearing, and not personal service, the panel in *Krueger* pointed out that notice is not only a statutory requirement, but a constitutional requirement as well.[17] "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[18] Hence, because the debtors in that case had not received notice of the hearing, the BAP reversed the order dismissing the case and declared the foreclosure sale void.

We agree with the general notice and due process principles outlined in *Krueger*. However, the facts in that case are distinguishable from the facts here. In *Krueger*, despite being specifically directed by the court to do so, the foreclosing creditor did not even attempt to provide the debtors with notice of the continued hearing following which the case was dismissed. Nor did it notify the debtors that it had rescheduled its foreclosure sale. The court expressly found that the creditor in that case had acted in bad faith. The same is not true here. CBASS attempted to serve the Debtor personally and through the mail.

---

[16] 88 B.R. 238, 241 (B.A.P. 9th Cir. 1988).

[17] *Id.*

[18] *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)).

Moreover, this is the Debtor's eighth bankruptcy filing, the fourth since he entered into the loan with CBASS's predecessor. It is also the third time CBASS has stayed or canceled a foreclosure sale. He filed this case *pro se* such that an attorney could not be contacted by CBASS, and he filed it while he was out of town and would not return until after the foreclosure sale. We recognize that the automatic stay is a valuable benefit provided by the Code, and that many debtors legitimately invoke it to prevent foreclosure. However, "a debtor does not have a constitutional or fundamental right to a discharge in bankruptcy."[19] The automatic stay should not be viewed as a right, but more as a privilege, which may be denied to petitioners who abuse it.[20] Hence, a person cannot file a *pro se* case on the eve of a foreclosure and then absent himself so that he cannot be notified of a motion for relief from stay, particularly when it is not the first foreclosure stayed.[21] If circumstances mandate that a debtor file a bankruptcy case under such conditions, then the debtor has a duty to actively keep himself apprised of the events in his case by checking the court's docket or contacting the creditor's counsel.

In this case, CBASS attempted both personal service and first-class mail notification of its Motion six days prior to the hearing. The Debtor also concedes he had notice of the foreclosure sale. Under the particular circumstances of this case, we

---

[19] *In re Golden State Capital Corp.*, 317 B.R. 144, 149 (Bankr. E.D. Cal. 2004) (citing *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991)).

[20] *Id.* (citing *In re Tolbert*, 258 B.R. 387, 390 (Bankr. W.D. Mo. 2001)).

[21] *See In re Martwick*, 60 F.3d 482 (8th Cir. 1995) (holding that the bankruptcy court did not abuse its discretion in denying the debtors' motion for continuance of the expedited hearing on a foreclosing creditor's motion for relief from stay and to dismiss due to debtors' counsel being out of town; counsel's election to file the case and then leave the state on the eve of the foreclosure sale, knowing that the creditor would likely seek to lift the stay, did not warrant a continuance of the expedited hearing).

conclude this was sufficient notice and opportunity for hearing under the requirements of the Bankruptcy Code, the Rules and Local Rules, and that the Debtor's constitutional due process rights were adequately protected.

Accordingly, the Bankruptcy Court's Order denying the Debtor's March 23 Motion to vacate is AFFIRMED.

---